FILED DISTRICT COURT
Stephens County, Okla.

JUN 11 2019

DANA BLEVINS
COURT CLERK

IN THE DISTRICT COURT OF STEPHENS COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| CHARLES W. BROWN and PATTY N. BROWN, LLC, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> NEWFIELD EXPLORATION MID-CONTINENT, INC., ) <br><br> Defendant. ) | Case No. CJ-19-1186 |

## PETITION

COMES NOW the Plaintiff Charles W. and Patty N. Brown, LLC ("CPB") and, for its claims against Defendant Newfield Exploration Mid-Continental, Inc. ("Newfield") alleges and states as follows:

1. CPB is an Oklahoma limited liability company.

2. Newfield is a foreign corporation that has offices in Oklahoma and conducts business in Oklahoma.

3. The Court has subject matter jurisdiction, personal jurisdiction over the parties and venue is proper in this District, as the oil and gas wells operated by Newfield are located in this county.

4. CPB owns certain mineral interests in Section 19, Township 1 North, Range 4 West, Stephens County, Oklahoma ("Section 19").

5. CPB leased its mineral rights in Section 19 to Heritage Resources – NonOp, LLC. *See* Oil and Gas Leases attached as Exhibit "1" and Exhibit "2" ("Leases").

1

Exhibit 1

6. Section 19 is spaced as a 640 acre drilling unit as to the common sources of supply related to the wells at issue in this case.

7. Under the terms of the Leases CPB is to be paid a royalty of 1/4 of all the gross proceeds generated from the production and sales of the hydrocarbons produced in Section 19 free of all costs except taxes.

8. Newfield drilled and completed multiple horizontal wells in Section 19 that included CPB's minerals.

9. Newfield recognizes Heritage Resources-NonOp, LLC as a working interest in the wells drilled in Section 19 and is paying Heritage Resources pursuant to CPB's Leases.

10. Newfield sent CPB a Division Order which incorrectly listed CPB with a 1/8 royalty interest in Section 19. CPB notified Newfield of the error but Newfield has not responded or corrected its error.

11. Newfield has not paid the royalties due under the terms of the Lease related to wells drilled in Section 19 that include CPB's mineral interest.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

12. Paragraphs 1 through 11 set forth above are hereby incorporated as though fully set forth herein.

13. Newfield breached the terms of CPB's Lease by failing to pay CPB a one-fourth (1/4) royalty on CPB's proportionate share of production from the wells drilled and completed in Section 19.

14. CPB notified Newfield of the error and demanded an accounting and payment of all sums due to CPB. Newfiled has failed to respond or correct the errors.

15. CPB is entitled to accounting from Newfield for all production and proceeds received from production from wells which include CPB's interests in Section 19.

16. CPB is entitled to judgment against Newfield for CPB's proportionate share of the proceeds from production attributed to Section 19, 12% interest as required by statute, expert witness fees, costs and attorney fees which is believed to be in excess of $75,000.

## SECOND CAUSE OF ACTION
## (BREACH OF STATUTE)

17. Paragraphs 1 through 16 above are hereby incorporated as though fully set forth herein.

18. Upon information and belief, Newfield has breached its statutory duty under 52 O.S. § 570.1 *et seq.* to timely remit payment due to CPB relating to the wells drilled and completed in Section 19.

19. CPB is entitled to an accounting, judgment for all sums owed CPB, interest, expert witness fees, costs and attorney's fees.

## THIRD CAUSE OF ACTION
## (NEGLIGENCE)

20. Paragraphs 1 through 19 above are hereby incorporated as though fully set forth herein.

21. Newfield has a duty to CPB to operate the wells within Section 19 in a prudent manner. Newfield also owes a duty to CPB to act in good faith and pay CPB properly and timely each month.

22. Newfield has failed to operate the wells in Section 19 in a prudent manner and has violated its duties to CPB to timely pay CPB and act in good faith.

23. CPB has been damaged by Newfield's negligence in an amount in excess of $75,000.

24. Newfield's conduct constitutes reckless disregard for CPB's rights for which Newfield should be punished in an amount not less than actual damages, together with such other damages and relief the Court deems appropriate.

### FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

25. Paragraphs 1 through 24 above are hereby incorporated as though fully set forth herein.

26. Upon information and belief, Newfield has received an unfair benefit by not paying CPB as required by the Lease terms and as required by law.

27. Newfield has received an unfair benefit to the detriment of CPB.

28. CPB is entitled to recover the value of the benefit conferred upon Newfield together with interest, costs and attorney's fees.

WHEREFORE, CPB prays for judgment against Newfield for an accounting, actual damages, punitive damages, interest, costs, expert witness fees, and such further relief the Court deems equitable and proper.

Respectfully submitted,

*ATTORNEY'S LIEN CLAIMED*

Conner L. Helms, OBA No. 12115
HELMS LAW FIRM
One N.E. Second St., Ste. 202
Oklahoma City, OK 73104
Telephone: (405) 319-0700
Facsimile: (405) 319-9292
conner@helmslegal.com
*Attorney for Plaintiff*

090150

(Prod. Pooling)(Oklahoma)(640 Shut-In)(Paid-Up)(CELP-CBMG)(NOV02)

81-8824

**OIL AND GAS LEASE**
(Paid-up)

L0564038

AGREEMENT, made and entered into this ___8th___ day of ___September___, 20 10, by and between:
_____Charles W. Brown & Patty N. Brown, LLC_____
_____P. O. Box 587_____
_____Marlow, Oklahoma 73055_____,
party of the first part, hereinafter called Lessor (whether one or more), and **Chesapeake Exploration, L.L.C.**, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, party of the second part, hereinafter called Lessee.

WITNESSETH, that the said Lessor, for and in consideration of Ten Dollars, cash in hand paid, and other good and valuable consideration receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of Lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said Lessee, for the sole and exclusive purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate), gas (including casinghead gas, helium, coalbed methane gas and all other constituents), and for laying pipelines, and building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land, together with any reversionary rights therein, situated in the County of ___Stephens___, State of Oklahoma, described as follows, to-wit:

_____Lot 4 (40.52 ac.) & N/2 SE/4 SW/4 & SW/4 SE/4 SW/4_____

of Section __19__, Township __1N__, Range __4W__, and containing __70.52__ acres, more or less.

1. It is agreed that this lease shall remain in force for a term of __three ( 3 )__ years from date (herein called primary term) and so long thereafter as oil or gas, or either of them, is produced from said land or lands pooled therewith.

2. In consideration of the premises the said Lessee covenants and agrees:
   A. To deliver to the credit of Lessor free of cost, in the pipeline to which it may connect its wells, a __1/4th__ part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.
   B. To pay Lessor for gas (including casinghead gas and coalbed methane gas) and all other substances covered hereby, a royalty of __1/4th__ of the proceeds realized by Lessee from the sale thereof, less a proportionate part of the production, severance and other excise taxes and the cost of making such gas or other substances ready for sale or use, said payments to be made monthly. During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, Lessee shall pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder, such payment or tender to be made, on or before the later of ninety (90) days following the date of shut in or the anniversary date of this lease during the period such well is shut in, to the Lessor. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.

3. If, at the expiration of the primary term, there is no production in paying quantities on the leased land or on lands pooled therewith but Lessee is conducting operations for drilling, completing or reworking a well, this lease nevertheless shall continue as long as such operations are prosecuted or additional operations are commenced and prosecuted (whether on the same or successive wells) with no cessation of more than ninety (90) days, and if production is discovered, this lease shall continue as long thereafter as oil or gas are produced. In addition, if at any time or times after the primary term, there is a total cessation of all production, for any cause (other than an event of force majeure), this lease shall not terminate if Lessee commences or resumes any drilling or reworking operations or production within ninety (90) days after such cessation. Drilling operations or mining operations shall be deemed to be commenced when the first material is placed on the leased premises or when the first work other than surveying or staking the location is done thereon which is necessary for such operations.

4. Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands as to all strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, no unit for the production primarily of oil shall embrace more than 160 acres, or for the production primarily of gas with or without distillate more than 640 acres; provided that if any governmental regulation shall permit or prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so permitted or prescribed or as may be used in such allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located unless the pooling or unitization results from governmental order or rule, in which case no such written designation shall be required. Operations upon and production from the unit shall be treated as if such operations were upon or such production were from the leased premises whether or not the well or wells are located thereon. The entire acreage within a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as below provided, and except that in calculating the amount of any shut in gas royalties, only the part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor, in lieu of other royalties thereon, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage in the unit.


PLAINTIFF'S EXHIBIT 1

Exhibit 1

Case 5:19-cv-00600-G  Document 1-1  Filed 07/02/19  Page 6 of 11

000151

5.   If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the Lessor only in the proportion which his interest bears to the whole and undivided fee.
6.   Lessee shall have the right to use, free of cost, gas, oil, and water produced on said land for its operations thereon, except water from wells of Lessor.
7.   Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.
8.   If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment or a true copy thereof. In case Lessee assigns this lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.
9.   ~~If at any time within the primary term of this lease or any continuation thereof, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional lease (top-lease) covering all or part of the aforedescribed lands, Lessee shall have the continuing option by meeting any such offer to acquire such top-lease. Any offer must be in writing and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such lease, and include a copy of the lease form to be utilized reflecting all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt from Lessor of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer. Any top-lease granted by Lessor in violation of this provision shall be null and void.~~
10.  All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation, or operation of force majeure.
11.  This lease shall be effective as to each Lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the Lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease means the party or parties who execute this lease as Lessor, although not named above.
12.  Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to Lessor, or by placing a release of record in the proper County.
13.  This lease is made by Lessor without warranty of title, either express or implied, except as to conveyance or encumbrances by, through, or under Lessor, but not otherwise. Lessor agrees that Lessee shall have the right at any time to redeem for Lessor by payment any mortgages, taxes, or other liens on the above-described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof.
14.  The Lessee's failure to comply with any covenant or obligation of this lease shall not result in the forfeiture of the lease unless and until Lessor has provided Lessee notice of such default and gives Lessee sixty (60) days in which to cure such default.

**See Exhibit "A" attached hereto and made a part hereof**

IN TESTIMONY WHEREOF, we sign this the  8th  day of  September , 20 10 .

_Patty N. Brown_                                        _Charles W. Brown_
PATTY N. BROWN                                         CHARLES W. BROWN

STATE OF   OKLAHOMA                 }  (ACKNOWLEDGEMENT)
                                    } SS.
COUNTY OF  STEPHENS                 }

The foregoing instrument was acknowledged before us this  8th  day of  September , 20 10 , by  Charles W. Brown and Patty N. Brown

My Commission expires:  12-4-12
     080010017                              _Carmen E. Tidwell_
Commission Number:                          Notary Public

[Notary seal: CARMEN E. TIDWELL, NOTARY PUBLIC, STATE OF OKLAHOMA, STEPHENS COUNTY, COMM. EXP. 01/24/12, #080010017]

Exhibit 1

000152

## EXHIBIT "A"

Attached to and made a part of that certain Oil and Gas Lease dated September 8, 2010 between Charles W. Brown and Patty N. Brown, LLC, as lessor, and Chesapeake Exploration L.L.C., as lessee, covering lands in Section <u>19-1N-4W</u>, Stephens County, Oklahoma.

Notwithstanding anything to the contrary in the foregoing printed form, it is agreed and understood that the following provisions shall supplant or modify the foregoing as applicable.

1. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, lessor's prorata share of any such costs which result in enhancing the value of the marketable oil, gas or other products to receive higher net proceeds may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

2. Upon the expiration the primary term hereof, this lease shall expire and automatically terminate as to all leasehold rights 100 feet below the deepest depth drilled or the stratigraphic equivalent thereof in any well drilled under the terms of this lease.

3. Lessor shall not shut-in any gas well for more than three (3) consecutive years without the written consent of Lessor, said consent shall not be unreasonably withheld.

Record & Return To:
Chesapeake Operating, Inc.
P.O. Box 18496
Oklahoma City, OK  73154




Exhibit 1

000270




I-2018-012984  Book 5587  Pg: 270
12/13/2018 10:54 am  Pg 0270-0272
Fee: $17.00   Doc: $0.00
Jenny Moore - Stephens County Clerk
State of Oklahoma

**OIL AND GAS LEASE**
(PAID UP)

AGREEMENT, Made and entered into by and between **Charles W. and Patty N. Brown, LLC of P.O. Box 587 Marlow, OK 73055**, party of the first part, hereinafter called lessor (whether one or more), and **Heritage Resources - NonOp, LLC P.O. Box 13580, Oklahoma City, OK 73113**, party of the second part, hereinafter called lessee.

WITNESSETH, That the said lessor for and in consideration of TEN AND MORE DOLLARS, cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the purpose of investigating, exploring, prospecting, drilling, and operating for and producing oil and all gas of whatsoever nature or kind, including all associated hydrocarbons produced in a liquid or gaseous form, also including sulphur produced in association with oil or gas, hereinafter sometimes collectively referred to as "oil and gas," laying pipe lines, storing oil, building tanks, power stations, telephone lines and other structures and things thereon to produce, save, take care of, treat, process, store and transport said oil and gas and other products manufactured therefrom situated in the County of **Stephens**, State of **Oklahoma**, to-wit:

Lot 4 (40.52 acres) and N/2 SE/4 and SW/4 SE/4 SW/4

of Section **19**, Township **1 North**, Range **4 West**, and containing 70.52 acres, more or less.
It is agreed that this lease shall remain in force for a term of **(2) years** from effective date (herein called primary term) and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.
In consideration of the premises the said lessee covenants and agrees:
1st. To deliver to the credit of lessor free of cost, in the pipe line to which it may connect its wells, the **One Quarter (1/4)** part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises.
2nd. To pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, **One Quarter (1/4)** of the gross proceeds received for the gas sold, used off the premises or in the manufacture of products therefrom, but in no event more than **One Quarter (1/4)** of the actual amount received by the lessee, said payments to be made monthly. During any period (whether before or after expiration of the primary term hereof) when gas is not being so sold or used and the well or wells are shut in and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force, lessee shall pay or tender a royalty of One Dollar ($1.00) per year per net royalty acre retained hereunder such payment or tender to be made on or before the anniversary date of this lease next ensuing after the expiration of ninety (90) days from the date of such well is shut in and thereafter on the anniversary date of this lease during the period such well is shut in, to the royalty owners. When such payment or tender is made it will be considered that gas is being produced within the meaning of the entire lease.
If lessee shall, on or before any shut-in payment date, make a bona fide attempt to pay or deposit a shut-in payment to a royalty owner entitled thereto under this lease according to lessee's records at the time of such payment, and in such payment or deposit shall be erroneous in any regard, lessee shall be obligated to pay to such royalty owner the shut-in payment properly payable for the period involved, but this lease shall be maintained in the same manner as if such erroneous payment or deposit had been properly made, provided that lessee shall correct such erroneous payment within thirty (30) days following receipt by lessee of written notice from such royalty owner of the error accompanied by any documents and other evidence necessary to enable lessee to make proper payment.
3rd. To pay lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gasoline or dry commercial gas, **One Quarter (1/4)** of the gross proceeds, at the mouth of the well, received by lessee for the gas during the time such gas shall be used, said payments to be made monthly.
If the lessee shall commence to drill a well or commence reworking operations on an existing well within the term of this lease or any extension thereof or on acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned.
Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands as to all strata or any stratum or strata, for the production primarily of oil or primarily of gas, with or without distillate. However, no unit for the production primarily of oil shall embrace more than 40 acres, or for the production primarily of gas with or without distillate more than 640 acres, provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Lessee shall file written unit designations in the county in which the leased premises are located. Operations upon and production from the unit shall be treated as if such operations were upon or such production were from the leased premises whether or not the well or wells are located thereon. The entire acreage within a unit shall be treated for all purposes as if it



PLAINTIFF'S
EXHIBIT
2

Exhibit 1

000271

were covered by and included in this lease except that the royalty on production from the unit shall be as below provided, and except that in calculating the amount of any shut in gas royalties, only the part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor in lieu of other royalties thereon, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or his royalty interest therein on an acreage basis bears to the total acreage in the unit.

If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein whether stated hereinabove as whole or partial interest, then the royalties herein provided shall be paid to the lessor only in the proportion which his interest bears to the whole and undivided fee.

Lessee shall have the right to use, free of cost, gas and oil produced on said land for its operations thereon. Royalties shall be owing on use of gas (including fuel use) off of the Lease.

Lessee shall bury his pipe lines below plow depth.

No well shall be drilled nearer than 300 feet to the house or barn now on said premises, without the written consent of the lessor.

Lessee shall pay for all damages caused by its operations on said land.

Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs" executors, administrators, successors or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated, in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

This lease shall be effective as to each lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of lessors above named may not join in the execution hereof. The word "Lessor" as used in this lease means the party or parties who execute this lease as Lessor, although not named above.

Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to lessor, or by placing a release of record in the proper County.

**Please see Exhibit "A" attached hereto for additional provisions.**

IN TESTIMONY WHEREOF, the undersigned has executed this instrument this 12th day of December 2018, but shall be effective for all purposes as of the 3rd day of August 2017.

_Charles W. Brown_ (signature)

Charles W. and Patty N. Brown, LLC

By: Charles W. Brown

Title: _President_

STATE OF OKLAHOMA )
                  ) SS:
COUNTY OF Oklahoma )

Before me, the undersigned, a Notary Public, in and for said County and State, on this _12_ day of December, 2018 personally appeared Charles W. Brown, who executed the within and foregoing instrument as President for the Charles w. and Patty N. Brown, LLC, an Oklahoma Limited Liability Company.

Given under my hand and seal the day and year last above written.

_Jan Fair_ (signature)

JAN FAIR
NOTARY
#17004830
EXP. 05/23/21
STATE OF OKLAHOMA

Notary Public

My Commission expires: _05/23/21_

Exhibit 1

000272

## EXHIBIT "A"

Attached to and made a part of that certain Oil & Gas Lease (herein, "Lease") executed December 12, 2018 between **Charles W. and Patty N. Brown, LLC**, Lessor, and **Heritage Resources – NonOp, LLC**, Lessee.

This lease is subject to that certain Oil and Gas Lease dated August 4th, 2014 and recorded in Book 4795 at Page 7 of the records of the County Clerk of Stephens County, OK. This lease covers the full interest that would revert to Lessor upon the termination of said existing lease. The interest herein shall vest in possession immediately upon the termination of said existing lease.

1. The Lease to which this Exhibit "A" is attached is hereby amended to comply with the provisions hereinafter provided. In the event of a conflict or inconsistency between this Exhibit "A" and the Lease to which this Exhibit "A" is attached, the provisions of this Exhibit "A" shall control.

2. This Lease shall expire at the end of the primary term as to all formations (common sources of supply) below the stratigraphic equivalent of the base of the deepest producing formation (common source of supply) by any well drilled or re-entered on the subject lands or on lands spaced, unitized, or pooled therewith during the primary term of this Lease.

3. At the expiration of the primary term hereof, this Lease shall expire as to all lands covered by this Lease which are not then included within a Producing Unit. "Producing Unit" shall be defined as all lands covered by this Lease which are included within a spacing unit, as established by the Oklahoma Corporation Commission (OCC) or created voluntarily, on which a producing well or well capable of commercial production is located. If a Producing Unit has not been established, either by the OCC or voluntarily, the Producing Unit shall be comprised of only those lands covered by this lease which are then included in the governmental survey quarter-quarter section (40 acres) in which the producing well is located. Should the size of any Producing Unit be reduced after the expiration of the primary term of this Lease by order of the OCC, all portions of this lease not included in such after-prescribed Producing Unit shall be deemed expired and released under the terms of this Lease, and no recorded release of such expired lands shall be necessary in order to effect expiration of same.

4. If, at the end of the primary term, Lessee, its agents, heirs, successors, assigns, or any other party acting in accordance herewith is engaged in drilling, reworking, or other operations which would otherwise maintain this lease in force and effect, said party may continue such operations in good faith and with due diligence, and if said operation results in the commercial production of oil, gas, or other hydrocarbons, this Lease shall continue in force and effect as though such production had been obtained prior to the expiration of the primary term.

5. This lease shall not be maintained in force by payment of shut-in royalties for a period in excess of a total of two (2) consecutive years beyond the primary term of this lease.

6. Within sixty (60) days after expiration or termination of this Lease or any portion hereof pursuant to any of the terms herein provided, and upon written request by Lessor, Lessee shall execute and record an appropriate release evidencing such expiration or termination, and Lessee shall promptly supply Lessor with a recorded copy thereof.

7. Lessee, its successor and assigns, hereby agree that, for the purpose of calculating royalty payments hereunder on all production from the leased premises or any lands pooled, unitized, or spaced therewith, such calculations shall be made at the wellhead and shall be free and clear of any and all delivery costs and shall not be burdened, directly or indirectly, by any costs of production, nor shall it be burdened by any post-production costs, except as allowed by law. However, said royalty payments shall be subject to their proportionate part of the production, severance, and other excise taxes deductible therefrom.

8. Should Lessee or any of Lessee's representatives sell oil or gas pursuant hereto to an affiliated, related, or controlled party, royalty paid hereunder with respect to such sales shall be calculated on the basis of the greater of either (a) the amount received by the affiliated or controlled party upon resale of the oil or gas, or (b) the highest price then being paid in the general area for oil or gas of comparable quality.

9. Upon commencement of operations for any well drilled or re-entered subject to the terms of this Lease, Lessee shall immediately provide Lessor, free of cost, all well information including, but not limited to, copies of all electric logs, mud logs, bond logs, daily drilling and completion reports, drillstem tests, open flow tests, BHP surveys, copies of title opinions, copies of all filings with any regulatory agency, and other well information on any well drilled or re-entered pursuant to the terms of this Lease, insofar as Lessee is reasonably able to procure copies of same. Copies of such well information may be sent in either print or digital format.

10. For purposes of this Lease, drilling operations shall be defined as and shall be deemed to have commenced when actual drilling (spud) of a well has been commenced by a drilling rig capable of drilling to total depth.

11. This Lease is made without warranty of title, either express or implied.

END OF EXHIBIT "A"

Exhibit 1

**HELMS LAW FIRM**
ATTORNEYS AND COUNSELORS AT LAW
ONE NE SECOND STREET, SUITE 202
OKLAHOMA CITY, OKLAHOMA 73104

CERTIFIED MAIL

7006 0810 0000 5863 4037



U.S. POSTAGE ⟩⟩ PITNEY BOWES

ZIP 73104   $ 012.40
02 4W
0000333437 JUN 11 2019

Newfield Exploration Mid-Continent, Inc.
c/o Corporation Service Company
10300 Greenbriar Place
Oklahoma City, OK 73159

Exhibit 1